Jennifer L. Keller, SBN 84412
jkeller@kelleranderle.com
Nahal Kazemi, SBN 322026
nkazemi@kelleranderle.com
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
T: (949) 476-8700
F: (949) 476-0900

Attorneys for Plaintiff,
CITY OF COSTA MESA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| CITY OF COSTA MESA, AND KATRINA FOLEY,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, THE UNITED STATES DEPARTMENT OF DEFENSE, THE UNITED STATES AIR FORCE, THE CENTERS FOR DISEASE CONTROL AND PREVENTION, THE STATE OF CALIFORNIA, FAIRVIEW DEVELOPMENTAL CENTER (FAIRVIEW), THE CALIFORNIA GOVERNOR'S OFFICE OF EMERGENCY SERVICES, and THE CALIFORNIA DEPARTMENT OF GENERAL SERVICES<br><br>Defendants. | Case No.  8:20-cv-368<br><br>**NOTICE OF AND *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE ISSUANCE OF PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Supporting Documents Forthcoming*] |

Plaintiffs, the City of Costa Mesa (the "City") and Katrina Foley, hereby apply for a Temporary Restraining Order ("TRO") and Order to Show Cause ("OSC") re Issuance of Preliminary Injunction, pursuant to Federal Rules of Civil Procedure, Rule 65(b), temporarily restraining defendants, and their agents, servants, employees and attorneys, and all those in active concert or participation with defendant from: Transporting persons infected with or exposed to the Coronavirus to any place within Costa Mesa, California until an adequate site survey has been conducted, the designated site has been determined suitable for this purpose, all necessary safeguards and precautions have been put in place, and the public and local government have been informed of all efforts to mitigate risk of transmission of the disease.

In the alternative, the Plaintiffs seek a stay of the order in the event the Court does not grant the temporary restraining order.

This Application is made on the grounds that immediate and irreparable injury will result to plaintiff unless the activities described above are restrained pending hearing on Order to Show Cause why a preliminary injunction should not issue.

The Application will be based on this Application, the accompanying Memorandum of Points and Authorities, the declaration of Jennifer L. Keller, the declaration of Nahal Kazemi, the Declaration of Kimberly Barlow, the Declaration of Jason Dempsey and such other and further evidence as may be presented to the Court at the time of hearing.

On February 21, 2020 at 3:19 p.m. counsel for the City provided notice to counsel for Defendants by e-mail (*See* Kazemi Declaration Exhibits 1 and 2.) informing them the Plaintiffs were filing this *ex parte* application and explaining the basis for the application. Counsel for Defendants were informed of the

anticipated date and time for hearing to be requested of the court and the nature of the relief to be requested.

Dated: February 21, 2020              KELLER/ANDERLE LLP

                                By:   /s/ Jennifer L. Keller
                                      Jennifer L. Keller
                                      Attorneys for Plaintiff,
                                      City of Costa Mesa

The City submits the following Memorandum of Points and Authorities in Support of its Ex Parte Application for Temporary Restraining order and Order to Show Cause Preliminary Injunctions:

## I. INTRODUCTION

The Plaintiffs seek this temporary restraining order (TRO) under Fed. R. Civ. P. 65 against the United States of America, the Department of Health and Human Services, the United States Department of Defense, the United States Air Force, the Centers for Disease Control and Prevention, the State of California, Fairview Developmental Center (Fairview), the California Governor's Office of Emergency Services, and the California Department of General Services (the "Defendants") to prevent the *immediate* transfer of individuals infected with COVID-19 (the "Coronavirus") to the grounds of the former Fairview Development Center in the City of Costa Mesa California.

This highly communicable and deadly disease has no known vaccination or cure and has killed thousands. Its scope appears to be growing worldwide at an alarming rate. U.S. Public Health Officials have sounded the alarm over a potential global pandemic. The Plaintiffs now seeks to prevent Costa Mesa from becoming ground zero to a state and potentially nation-wide public health crisis caused because the state and federal governments have not sought to include local officials and emergency personnel in the planning and execution of their efforts.

The relief sought by the Plaintiffs is modest. It seeks only to ensure that all necessary steps are taken to protect public safety, that first responders and health professionals receive the training they need to protect themselves and their community, and that the state and federal government stop acting under the cover of darkness, which would create greater panic and confusion among the population.

## II. JURISDICTION AND VENUE

Jurisdiction under 28 U.S.C. Section 1331 is proper as Plaintiffs' claims arise under the United States Constitution, 5 U.S.C. Section 701-06 (Administrative Procedure Act), and 42 U.S.C. Section 1983.  Venue is proper in the Central District of California as Defendants include United States and California officers and agencies sued in their official capacities and a substantial portion of the events giving rise to the claims will occur in the City of Costa Mesa, within this federal district.  One of the plaintiffs in an individual who resides within the District.

## III. STATEMENT OF FACTS

Defendants intend to relocate from 35-50 patients already diagnosed with the Coronavirus from a secure location on Travis Air Force Base, where they are isolated from population centers, to Costa Mesa, a densely populated city within a county of over 3 million. (Dempsey Decl. ¶¶ 2, 6-7).  And they plan to do so without first determining the suitability of the facility where these individuals will be housed.  The Defendants' plan was announced at the eleventh hour, with no efforts to include local government leaders or local public health officials.  (*Id*.). Indeed, State officials demanded to know why local emergency personnel notified City leaders *at all* of the plan to introduce people with a deadly and highly communicable disease into the community.

Fairview was previously used as a residential facility for individuals with disabilities that prevented them from living independently.  (Dempsey Decl. ¶ 3). Fairview is a dilapidated complex surrounded by residential neighborhoods, busy thoroughfares, and popular recreation facilities. (*Id*.).  It was not intended to house individuals infected with a highly contagious and deadly disease. (*Id*.).  The California State Department of General Services recently performed a site survey of Fairview and deemed it unsuitable for use as an emergency shelter, as it would

require two years and $25 million in renovations to make it properly habitable. (Barlow Declaration at ¶3). Fairview is an inappropriate location for a quarantine, as there is no way to restrict access to or from the facility; it is in some places about two hundred yards from residential neighborhoods, and there are no security measures in place to keep the quarantined individuals isolated from each other and from the residents of Costa Mesa, a city of over 113,000 people, with a population density of over 7,100 people per square mile. (Dempsey Decl. ¶¶ 3-5).

Orange County, California is the sixth largest county in America, with one of the highest population densities. Costa Mesa is a dense commercial and cultural center, with major gathering places such as the Segerstrom Center for the Arts, the Repertory Theater, and one of the world's highest grossing shopping center, South Coast Plaza. (South Coast Plaza is something of a tourist destination for international high-end shoppers.) The coronavirus has already brought China's massive economy to a halt. Introducing the virus to Costa Mesa without taking the necessary precautions to ensure it is not spread, and without informing the public of the efforts undertaken to protect their health and safety will wreak havoc on the local economy, endangering local businesses and starving local governments of tax revenues.

Coronavirus is highly contagious, may be spread by asymptomatic individuals. It appears to have been transmitted in Hong Kong through ventilation and/or plumbing systems between isolated units in an apartment building. Experts disagree about the incubation period and appropriate quarantine period, and the CDC itself objected to returning many of these infected people to the United States out of fears of transmission. (Kazemi Decl., Ex. 12, "Coronavirus-infected Americans flown home against CDC's advice," The Washington Post, Feb. 20, 2020 https://www.washingtonpost.com/health/coronavirus-diamond-princess-cruise-americans/2020/02/20/b6f54cae-5279-11ea-b119-4faabac6674f_story.html;

*see also, e.g.,* Kazemi Decl. Exs. 11, 16, 17).  The Defendants' plan to move these patients without a proper assessment of the Fairview facility and without informing local government and public health officials of what will be done to protect the residents of Costa Mesa and to maintain the quarantine poses an imminent danger to the community and to the individuals it intends to subject to the quarantine.

There is significant controversy over the incubation and quarantine periods for the disease, insufficient knowledge about how it spreads, and few treatments that appear successful. (Kazemi Decl., Ex. 10, "The largest study of coronavirus patients so far suggests it could take up to 24 days after exposure for symptoms to show." Business Insider, Feb. 13, 2020, https://www.businessinsider.com/wuhan-coronavirus-symptoms-24-days-after-infection-2020-2).  One federal official called the sudden jump in the number of cases in the U.S. caused by repatriating the individuals intended to be housed at Fairview as "a tremendous public health threat." (Kazemi Decl., Ex. 15, "Coronavirus Cases in the United States Reach 34, and More Are Expected."  The New York Times, Feb. 21, 2020, https://www.nytimes.com/2020/02/21/health/coronavirus-cases-usa.html?action=click&module=Alert&pgtype=Homepage.)

Moreover, the CDC's own website gives detailed instructions of the complex steps health care professionals must follow in order to properly quarantine infected individuals, including systems that the City fears Fairview does not have and cannot accommodate, such as negative air pressure circulation systems, HEPA air filtration, and specific air circulation protocols.  (Kazemi Decl., Ex. 7, https://www.cdc.gov/coronavirus/2019-ncov/hcp/infection-control.html.)  The CDC also has detailed clinical care guidance for the disease, although much remains unknown about its incubation period, modes of transmission, and potential treatment protocols.  (Kazemi Decl, Ex. 8, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html.)

The City's emergency services personnel have received no training on these procedures even though, according to the California Office of Emergency Services, **Defendants are depending on local ambulance services to transport infected individuals in need of hospitalization to local hospitals.** (Dempsey Decl. Ex., Jim Acosta 2/20/20 email). There is a significant risk first responders and health officials asked to care for patients who become seriously ill could themselves become infected and transmit the disease throughout the broader community. Even basic caregivers and providers of food and beverages could be exposed, and in turn expose their own families when they go home from their shifts. Defendants have provided no information to the City about how healthcare workers coming to Fairview to care for the patients will be housed and supported and what precautions will be taken to prevent further transmission of the disease.

## IV. TEMPORARY RESTRAINING ORDER IN GENERAL

In the Ninth Circuit, a party seeking a temporary restraining order must generally show either (i) a combination of probable success on the merits and the possibility of irreparable injury if .relief is not granted, or (2) the existence of serious questions governing the merits and that the balance of hardships tips in its favor. (See, *International Jensen, Inc. vs. MetroSound U.S.A., Inc.* (C.A. 9, Cal. 1993) 4 F3d 819, 822.)

The likelihood of success on the merits and the nature of the irreparable harm "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Dept. Parks & Rec. of Calif. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1123 (9th Cir. 2006) (citations omitted).

A TRO may issue in extreme emergencies such as this, even without a formal complaint having first been filed. *NORML v. Mullen,* 608 F. Supp. 945, 950 fn. 5 (N.D. Cal. 1985). The Plaintiffs intend to file a formal complaint as soon

as practicable, but seek emergency relief as the City was told only late in the evening of Thursday, February 20, 2020, that these individuals (approximately 50) would be transferred to Fairview on Sunday, February 23, 2020. (cite to Decl). No less extraordinary method of relief is available to Plaintiffs to prevent a grave risk of serious and irreparable harm, including the exposure of its residents to a dangerous, debilitating, and potentially deadly disease. Plaintiffs' failure to file a tort claim with the government is excused by the extraordinary nature of the potential harm and the need for immediate relief.

Plaintiffs are working to notify the Defendants of this application. (Kazemi Decl., Exs. 1 and 2). Given the extraordinary nature of this emergency, counsel for the Plaintiffs has informed both the U.S. Attorney's Office for the Central District of California and the California State Attorney General's Office of this application by email. As of the time of this filing, the Plaintiffs have not received a response from either office. Federal Rule of Civil Procedure 65(b) provides that a court may issue a TRO without notice to the adverse party in limited circumstances where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant...." Fed. R. Civ. P. 65(b)(1)(A). The movant must also certify in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b)(1)(B).

## V.  ARGUMENT

  1.  <u>The City Will Be Irreparably Harmed if the Court Does not Issue the Temporary Restraining Order</u>

Defendants' intended course of conduct will introduce an extraordinary public health risk to the City of Costa Mesa and all of Southern California – one of the most densely populated regions of the country. It will expose Cost Mesa's employees and residents, as well as untrained and ill-equipped personnel in local hospitals to a disease that continues to spread rapidly and has killed thousands.

Instead of taking measures to prevent the entry and spread of communicable diseases from foreign countries into the United States in accordance with the Public Health Service Act, the CDC – which initially **opposed the entry** of infected people into the country even though they were being directed to a tightly guarded Air Force base isolated from population centers – now seeks to put them in the middle of a densely populated residential area.

The plan violates the Administrative Procedure Act due to the federal Defendants' failure to consult with and incorporate local government in the planning and implementation process, and risks imposing a serious burden on the City's emergency services. This plan also violates the citizens of Costa Mesa's (including Plaintiff Foley's) civil rights, and both procedural and substantive due process rights, exposing them to significant risk of disease and even death. Of course, the risks extend beyond the City to Southern California and the United States as a whole, especially given Costa Mesa's proximity to major transit arteries and a large adjacent airport.

2. <u>The Plaintiffs' Requested Relief Maintains the Status Quo</u>

The Plaintiffs are seeking an injunction until a proper site survey can be completed to determine if Fairview can be made into a suitable facility for this purpose, and if so, until adequate resources in terms of public health and medical officials and first responders can be marshalled, and security measures necessary to enforce a quarantine implemented. As the federal government is already able to house, care for, and quarantine the infected people at Travis Air Force Base and can rely upon the resources of its own public health officials to maintain their care, it is most appropriate for the federal government to continue bearing the burden of this quarantine in a safe location, such as Travis Air Force Base, until the adequate precautions can be taken to transfer them to a non-military facility.

Additionally, because of the unknown incubation period of the disease, the fact those previously released from quarantine have later tested positive, and the extreme risk the disease poses, any plan to house individuals who have been exposed to the virus but have not tested positive is also a serious and imminent risk to the City and its residents and visitors. With Costa Mesa being adjacent to a major airport and just 40 miles from a huge international airport, transmission of the virus to the community could spark a nation-wide epidemic.

3. The Plaintiffs Are Likely to Prevail on the Merits

If the Defendants are not enjoined from introducing people infected with a deadly disease into the community without taking adequate steps to prevent transmission of that disease, the federal government will have violated Plaintiff Foley and other individuals' substantive and procedural due process rights and their civil rights.

The Defendants' conduct, introducing with virtually no warning a highly contagious and deadly disease into a populated area without first taking appropriate precautions to ensure the safety of the population and inform the public of efforts to reduce risk and proper precautions they themselves should take, violates the CDC's and HHS's internal regulations relating to quarantine procedures. The guidance the CDC is publishing on its own website regarding how to prevent the transmission of the disease strongly suggests it is violating its own procedures.

4. The Nature of the Harm Justifies a Temporary Restraining Order Even if Questions Remain Regarding of Plaintiffs' Likelihood of Success on the Merits

A party seeking a preliminary injunction in the Ninth Circuit must meet one of two variants of the same standard. First, a party can show that he or she is likely to succeed on the merits, that he or she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his or her favor,

and that an injunction is in the public interest. *Alliance For The Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Alternatively, under the sliding scale variant of the standard, if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two factors are satisfied. *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court temporarily restrain Defendants, and their agents, servants, employees and attorneys, and all those in active concert or participation with defendant from: Transporting persons infected with or exposed to the Coronavirus to any place within Costa Mesa, California until an adequate site survey has been conducted, the designated site has been determined suitable for this purpose, all necessary safeguards and precautions have been put in place, and the public and local government have been informed of all efforts to mitigate risk of transmission of the disease.

Dated: February 21, 2020

KELLER/ANDERLE LLP

By: */s/ Jennifer L. Keller*

Jennifer L. Keller
Attorneys for Plaintiff,
City of Costa Mesa